E-FILED
Friday, 14 July, 2006  04:30:10 PM
Clerk, U.S. District Court, ILCD

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE CENTRAL DISTRICT OF ILLINOIS
2              SPRINGFIELD DIVISION

3

4  UNITED STATES OF AMERICA,        )
                                    )
5          PLAINTIFF,               )    01-30048
                                    )
6      VS.                          )    SENTENCING HEARING
                                    )
7  JEFFREY A. MILLER,               )    SPRINGFIELD, ILLINOIS
                                    )
8          DEFENDANT,               )

9

10         TRANSCRIPT OF PROCEEDINGS
      BEFORE THE HONORABLE JEANNE E. SCOTT
11             U.S. DISTRICT JUDGE

12  JUNE 5, 2006

13  A P P E A R A N C E S:

14  FOR THE PLAINTIFF:        MR. PATRICK HANSEN
                              ASST. U.S. ATTORNEY
15                            318 SOUTH SIXTH
                              SPRINGFIELD, ILLINOIS
16

17  FOR THE DEFENDANT:        MR. DOUGLAS BEEVERS
                              ASST. FED. PUB DEFENDER
18                            600 E. ADAMS, 2ND FLOOR
                              SPRINGFIELD, ILLINOIS
19

20

21

22

23  COURT REPORTER:           KATHY J. SULLIVAN, CSR, RPR
                              OFFICIAL COURT REPORTER
24                            600 E. MONROE
                              SPRINGFIELD, ILLINOIS
25                            (217) 525-4199

```
 1                              I N D E X
 2    WITNESS                  DIRECT   CROSS   REDIRECT   RECROSS
      (NONE.)
 3
 4
 5
 6
 7
 8
 9
10
11
12                      E X H I B I T S
13
      GOVERNMENT'S EXHIBIT
14    NUMBER                    IDENTIFIED    ADMITTED
15
16
17
18
19    DEFENDANT'S EXHIBIT
      NUMBER                    IDENTIFIED    ADMITTED
20
21
22
23
24
25
```

KATHY J. SULLIVAN, CSR, RPR
OFFICIAL COURT REPORTER

```
 1                    P R O C E E D I N G S

 2         *    *    *    *    *    *    *    *    *    *    *

 3              THE COURT:   This is case 2001-CR-30048,

 4    United States of America versus Jeffery Allan

 5    Miller.

 6         Let the record reflect the Government is

 7    present by Assistant U.S. Attorney Patrick Hansen.

 8    The Defendant is present in person and with attorney

 9    Douglas Beevers.   This case is set for hearing on

10    revocation of supervised release.

11         Mr. Beevers, are you ready or not?

12              MR. BEEVERS:   Your Honor, we're ready to

13    have him admit the petition, but he did not get a

14    copy of the report.   It is the range we believed it

15    would be, but we would ask to, if we could, go ahead

16    with the admission now and do sentencing this

17    afternoon, if that would be possible.   He would like

18    to not stay in the county jail if possible.

19              THE COURT:   Mr. Hansen, would you have time

20    this afternoon as well to come back for the

21    sentencing, at least?

22              MR. HANSEN:   I do, Your Honor.   If I'm not,

23    somebody will be here who is familiar with the case.

24              THE COURT:   And do you have time this

25    afternoon, Mr. Beevers?
```

1          MR. BEEVERS:  Yes, Your Honor.

2          THE COURT:  Are you sure you want to go

3    ahead with the admission before he has reviewed the

4    violation report?

5          MR. BEEVERS:  Yes, Your Honor, the

6    admission is automatic because he has pled in state

7    court.

8          THE COURT:  All right.  We will go ahead

9    with the petition this morning, and if he wishes to

10   admit to various things, we will take the admission

11   and continue the matter for sentencing to this

12   afternoon so he can review the violation report.

13   And if it turns out he needs even more time, I will

14   consider that request later.

15       Is the microphone on on the table, Mr. Beevers?

16         MR. BEEVERS:  Yes.

17         THE COURT:  Mr. Miller, the Government has

18   filed a petition to revoke your supervision.  You've

19   seen that, have you not?

20         MR. MILLER:  Yes, I have.

21         THE COURT:  That petition alleges that you

22   were originally sentenced in 2001 for bank robbery.

23   And that as part of your sentence you were to do

24   three years of supervised release and comply with

25   the conditions that were set.  You began supervision

1    on October 19th of 2004.  And the Government claims

2    that you violated the conditions of your supervised

3    release in the following ways:

4         First, one of the conditions was that while on

5    supervised release you were not to commit any

6    offense, whether it be federal, state, or local.

7    And the Government alleges that you did commit the

8    offense of illegally possessing a controlled

9    substance on the following dates:  March 18th of

10   2005, March 23rd of 2005, May 3rd of 2005, May 19th

11   of 2005, June 10th of 2005, and August 8th of 2005.

12        It's alleged that on each of those dates you

13   committed the offense of possessing illegally

14   heroin, and that was determined through a laboratory

15   test of a urine specimen.

16        Do you understand that allegation?

17             MR. MILLER:  Yes.

18             THE COURT:  In addition, the Government

19   alleges that you violated the terms of your

20   supervision by committing another bank robbery.

21   Specifically they allege that on September the 12th,

22   2005, you committed the bank robbery of the Illini

23   Bank on Peoria Road in Springfield.  And that you

24   told a teller to give you the money, that it was a

25   robbery, that you had a gun.  And an undetermined

1    amount of cash was taken from the bank.

2        Do you understand that allegation?

3            MR. MILLER:  Yes.

4            THE COURT:  In addition, the Government

5    alleges that you violated the condition of

6    supervised release that you refrain from any use of

7    alcohol and not purchase, use, distribute, or

8    administer any controlled substances or have drug

9    paraphernalia unless it was prescribed by a doctor.

10        The Government claims that as part of that

11    condition you were ordered to submit to random urine

12    specimens to make sure you had not violated that

13    condition, and that you failed to submit the random

14    urine specimen that was requested on February 25th

15    of 2005, June 1 of 2005, September 7 of 2005, and

16    September 8th, 2005.

17        Do you understand that allegation?

18            MR. MILLER:  Yes, I do.

19            THE COURT:  Okay.  Those are the things

20    that you Government alleges you did which constitute

21    violations of your supervised release.

22        Now, you're entitled to have a hearing on these

23    allegations, and at the hearing to be represented by

24    counsel; and in fact, Mr. Beevers has been appointed

25    to be your attorney since you are indigent.

1    At the hearing you have the right to require
2 the Government to try to prove these allegations by
3 a preponderance of the evidence; which means by a
4 standard that they would have to show that the
5 allegations are more likely true than not true.  And
6 they would have to present evidence, and I, the
7 judge, would decide whether you violated the terms
8 or not by that standard.
9    Do you understand that.
10    MR. MILLER:  Yes.
11    THE COURT:  So at the hearing you would get
12 to see the Government witnesses and hear them and
13 confront them in open court and cross examine them
14 with counsel's help.
15    You would also have the right to present
16 evidence at the hearing yourself.  You could present
17 documents or witnesses.  If your witnesses wouldn't
18 come voluntarily, they would be subpoenaed and
19 compelled to come and tell what they knew.  You
20 could also present your own testimony if you wanted
21 to present evidence yourself.  You don't have to say
22 or do anything, but if you wanted to do so, you
23 would have the chance at the hearing.
24    Do you understand this?
25    MR. MILLER:  Yes.

8

1          THE COURT:  And at the end of all of the

2    evidence, I would decide whether you were in

3    violation by a preponderance of the evidence of any

4    of these conditions.

5      Do you also understand that?

6          MR. MILLER:  Yes.

7          THE COURT:  Now, if you were found to be in

8    violation of the bank robbery violation, that would

9    carry a maximum sentence to prison of up to two

10   years.  That would be the most you could receive.

11     Do you understand that?

12         MR. MILLER:  Yes.

13         THE COURT:  Do you have any question about

14   the nature of the allegations or your right to a

15   hearing?

16         MR. MILLER:  No, no questions.

17         THE COURT:  All right.  Would you like to

18   have a hearing where the Government would have to

19   prove that you did violate these terms, or do you

20   admit that you did violate as claimed?

21         MR. MILLER:  Hearing is not necessary, I

22   admit the violation.

23         THE COURT:  All right.  And has anyone

24   threatened you or forced you in any way to make this

25   admission?

        MR. MILLER:  No.

        THE COURT:  Has anyone promised you any

benefit if you would come in here and admit that you

violated the terms of your release?

        MR. MILLER:  No.

        THE COURT:  Are you making this admission

of your own free will?

        MR. MILLER:  Yes.

        THE COURT:  And you understand you will be

sentenced on the violations and you could get up to

two years in prison?

        MR. MILLER:  Yes.

        THE COURT:  All right.  Does the Government

wish to add anything by way of factual basis?

        MR. HANSEN:  No, Your Honor.

        THE COURT:  Do you have anything you wanted

to add, Mr. Beevers?

        MR. BEEVERS:  No, Your Honor.

        THE COURT:  All right.  Based on the

Defendant's admission, which the Court finds to be

knowingly and voluntarily made, and made with the

advice of counsel, the Court finds the Defendant is

in violation of the terms of his supervised release

as alleged in each of the three violations and each

subparagraph.

1    The Court will continue the sentencing until

2    this afternoon; let's say 2:15.  I think we have a

3    1:30 with you folks, and I'm not sure how long that

4    will last, but we will aim for 2:15.  Will that give

5    you enough time, Mr. Miller, to review this and

6    confer with your attorney?

7            MR. MILLER:  Yes.

8            THE COURT:  If it doesn't, you can tell me

9    that this afternoon and I will give you more time.

10   We will have you back in court at 2:15.

11   Mr. Beevers, you will make the violation report

12   available to him, or we will get another one from

13   Probation.

14           MR. BEEVERS:  Yes, Your Honor, I will make

15   it available.  I would note we have an objection to

16   it.  The Criminal History category we show in our

17   judgment is Criminal History Category II.  And this

18   was Mr. Moot, but I believe his notes show that as

19   the final level, but I just want to make sure that

20   the Court could verify with the Court's record.

21           THE COURT:  Well, hold on a moment here.  I

22   think I -- at the time of sentencing, the original

23   Pre-Sentence which I've got here showed four

24   Criminal History points, Criminal History Category

25   III.  Unless that was changed at the hearing.

1          MR. BEEVERS:  Your Honor, Mr. Moot objected

2    to the Criminal History Category on the basis of an

3    ex parte conviction.  And the statement of reasons I

4    have shows Criminal History Category II.

5          THE COURT:  You may be right.  We would

6    probably have to check the actual record of the

7    sentencing hearing to confirm that.  I did allow

8    some objection; if that was the only one, then

9    you're right.

10         The docket sheet reflects that I allowed a

11   defense objection to the Pre-Sentence.  We will go

12   back and try to confirm that.  But if it is Category

13   II, does that change the range?  It doesn't change

14   the statutory range of penalty, does it?

15         MR. KOTCHER:  It doesn't change the

16   statutory range, Your Honor.  It would change the

17   Guideline range.

18         THE COURT:  The policy statement range,

19   what would that be then?

20         MR. KOTCHER:  15 to 21 months.

21         THE COURT:  Okay.

22         MR. KOTCHER:  Your Honor, all my documents

23   reflect III.  I apologize for any kind of --

24         THE COURT:  That's all right, we will

25   double check.  It's probable as Mr. Beevers

1    indicated, that I sustained an objection.

2         MR. KOTCHER:  My statement of reasons

3    signed by the Court reflects III.  All my documents

4    in my file say III.

5         THE COURT:  We will try and check that out.

6         MR. BEEVERS:  Thank you, Your Honor.

7         THE COURT:  Mr. Miller, you would still

8    face a maximum of two years in prison.  There's

9    something called a policy statement range, which is

10   not binding on the Court, but a recommended range

11   would be 15 to 21 months.  A little less than the

12   two years; if indeed things are as your counsel

13   represented.  Otherwise, it would be 18 to 24

14   months.  But two years is the max you could get.

15   And we will double check that.

16       We will see you at 2:15.  Thank you.

17       (Whereupon a break was taken.)

18         THE COURT:  Again, this is case

19   2001-CR-30048, United States of America versus

20   Jeffery Allan Miller.

21       Let the record reflect the Government is

22   present by Assistant U.S. Attorney Patrick Hansen.

23   Mr. Miller is present in person and with his

24   attorney Douglas Beevers.

25       The Defendant this morning admitted the

violations of supervised release and was found in violation.  We continued the hearing until this afternoon so the Defendant would have time to review the violation report which the Probation Officer had prepared.

Have you had a chance to review the violation report, Mr. Miller?

MR. MILLER: :  Yes, I have.

THE COURT:  Okay.  I would inform you that I had double checked the record from the original sentencing hearing, I had the Court Reporter check her notes.  And we learned that at the sentencing hearing originally there was an objection to one of the Criminal History points, which I sustained, and in the end the Criminal History at the original sentencing hearing was found in be Category II rather than III.

So does anyone have anything to the contrary that you wanted to say?  I believe that's accurate.

MR. HANSEN:  That coincides with the Government's records as well, Your Honor.

THE COURT:  All right.  So to that extent, it would mean that the policy statement range would be 15 to 21 months.  Again, the Court is not bound to sentence within that range.  The Court could

1    sentence up to two years, as I informed the

2    Defendant this morning.

3        Does the Government have any objection to

4    anything in the violation report, other than the

5    notation of the Criminal History Category which

6    should be II rather than III?

7            MR. HANSEN:  No, Your Honor.

8            THE COURT:  With that change, do you have

9    any objection to the report, Mr. Beevers?

10           MR. BEEVERS:  No, Your Honor.

11           THE COURT:  Mr. Miller, is there anything

12   in the report that you object to?

13           MR. MILLER:  No.

14           THE COURT:  All right.  Then as we've

15   noted, the policy statement range is 18 -- excuse

16   me, it's 15 to 21 months.  The statutory maximum is

17   two years.  And those are the Court's findings with

18   respect to the violation report.

19       Does the Government have any evidence to

20   present at this hearing?

21           MR. HANSEN:  No evidence, Your Honor.

22           THE COURT:  Mr. Beevers, do you have

23   evidence on the sentencing issues?

24           MR. BEEVERS:  Yes, Your Honor.  I would

25   just ask the Defendant to testify to update on his

1    medical situation.

2         THE COURT:  All right.  Would you swear the

3    Defendant as a witness?  Just raise your right hand

4    and be sworn.

5       (The Defendant was sworn.)

6         THE COURT:  Do you want the handcuffs

7    removed?  I didn't see them until just now.

8         MR. BEEVERS:  Yes, if we could.

9         THE COURT:  Please remove them during the

10   hearing.

11      If you want, you can remain there, if the

12   questioning is brief, but speak in the microphone.

13        MR. BEEVERS:  Just briefly.  Your Honor.

14              JEFFREY A. MILLER

15   called as a witness herein, having been duly sworn,

16   was examined and testified as follows:

17              DIRECT EXAMINATION

18   BY MR. BEEVERS:

19      Q.  Could you tell us your name and what your

20   current medical condition is?

21      A.  Yeah.  My name is Jeffery Allan Miller.

22   Currently in custody of the Illinois Department of

23   Corrections serving a ten year sentence for

24   aggravated robbery.

25      As far as my medical condition, I'm suffering

from mitrovalve prolapse, which gives me left
ventricular cardiac arrhythmia, hypertension.  The
valve leaks, so I have chronic pain.  Also I suffer
from chronic active hepatitis C, which basically
means the liver is destroying itself.

Like I said, I'm in the custody of the Illinois
Department of Corrections, which health care isn't
really the greatest.

Q.  Can you explain the difference with the
treatment of hepatitis in federal custody compared
to the state?

A.  I completed my federal sentence in February
of 2004, in FCI Pekin.  At that time it was
scheduled -- they was ready to schedule me a biopsy
to put me on interferon treatment, which is
basically on the cure for hepatitis C.

Now being with Illinois Department of
Corrections, my understanding, having talked to a
doctor at the hospital, they do not offer any type
of treatment whatsoever for Hepatitis C in Illinois
Department of Corrections.

So I have a life threatening disease which will
not get better.  And basically my understanding is
they will monitor my enzyme levels which will tell
them basically how sick I'm getting, but other than

1    that they really offer no treatment.

2         Q.   And how does the condition make you feel?

3         A.   The condition, it is progressive in nature.

4    I have had it over 12 years I'm aware of.  The

5    symptoms I suffer now basically are chronic fatigue,

6    joint pain, I have digestive problems, get frequent

7    headaches, things like that.  It just gets worse

8    with time.  Right now I don't feel to bad, but

9    there's other days I don't feel good at all.

10             MR. BEEVERS:  That's all.  Thank you.

11             THE COURT:  Mr. Hansen, do you have any

12   questions?

13             MR. HANSEN:  I have no questions, Your

14   Honor.

15        (The witness was excused.)

16             THE COURT:  Thank you.

17        Is that all your evidence, Mr. Beevers?

18             MR. BEEVERS:  Yes, Your Honor.  I would

19   proffer that I believe some of those medical records

20   were provided to Probation to support that he does

21   have hepatitis.

22             THE COURT:  Mr. Kotcher, is that correct?

23             MR. KOTCHER:  Yes, Your Honor, we got them.

24             THE COURT:  Okay.  I'll hear arguments from

25   counsel on your recommendations for sentencing, and

1    then, Mr. Miller, if there's anything you want to

2    add, I'll let you speak before I sentence you.

3    Mr. Hansen?

4         MR. HANSEN:  Your Honor, after discussing

5    this matter both this morning and this afternoon

6    with Mr. Kotcher, it's the Government's

7    recommendation and request that the Court depart; I

8    know that's not the correct word; but to sentence

9    the Defendant to 24 months, which is the statutory

10    maximum, even though the Guideline policy statement

11    is 15 to 21 months.

12         We certainly are cognizant and sympathetic to

13    the Defendant's medical condition, but quite

14    frankly, there's nothing we can do about it.  When

15    he was in federal custody I believe his care was

16    good and was appropriate.  I don't think we have any

17    control over the State of Illinois procedures

18    however, or their medical staff.

19         And so again, while we're not unsympathetic to

20    it, there's just nothing we can do about it and we

21    don't see that it has a great amount of relevance to

22    the sentence, the decision the Court is about to

23    make.

24         Looking at the offense itself, it's -- it's

25    clear to everyone, I believe, in the courtroom, that

1    Mr. Miller is a heroin addict and as part of that

2    addiction he gets money by robbing banks.  And this

3    is not the first time it's happened; it's the second

4    time.

5        We were here in this courtroom five or so years

6    ago talking about Mr. Miller.  And at that time I

7    recall he had great family support and we heard a

8    lot about his background.  And again, it's a fairly

9    sympathetic case, but he's a heroin addict.  And the

10   five years, or amount of time he spent in the

11   federal prison, did not cure that.  And I'm not sure

12   there's an exact cure for the addiction he has.

13       So I'm -- I don't know what else to do with

14   him.  There is really nothing in mitigation that I

15   can think of for this offense.  He apparently did

16   nice work when he was out.  He did nice work before

17   robbing the first bank.  He is a good employee when

18   he works.  But the addiction overcomes him and he

19   acts out from there.

20       That does make him an extremely dangerous

21   individual in the Government's opinion, and we would

22   ask the Court to impose the maximum sentence.

23       It's also my understanding from Mr. Kotcher

24   that it would be necessary for us to request that

25   the Court re-impose an order of restitution for the

first offense.  At this point there's the amount of
3,456 dollars due and owing, and we would ask the
court to re-impose that as well.

THE COURT:  Thank you.

Mr. Beevers, I'll hear your argument.

MR. BEEVERS:  Thank you, Your Honor.

Your Honor, I'd ask you to impose a sentence
within the policy statement range.

I think although the Government says there
isn't such a thing as an upward departure in this
context, I think it is significant to look at the
Sentencing Commission and where they put an offense
like this.

Had he just committed an ordinary felony, he
would have -- with his Criminal History, only be
looking at 8 to 14 months.  But he is looking at a
higher range because of it being a crime of
violence.

But I think within the scope of types of crimes
of violence, the passing of a note is on the low
side.  The fact that he had done it before is
somewhat aggravating, but it is still not a case
where anyone was actually hurt.  But I think going
to the high end and then departing up from the
Guideline range when the actual conduct was within

1    the low side of the Guideline is not called for.

2        In addition, I raised the medical information

3    because although he received a ten year sentence in

4    state court, I would note that the Federal

5    Guidelines would have put that, even with his

6    Criminal History, he would be at approximately seven

7    or eight years as a Federal Guideline sentence.  So

8    he would -- he was not treated exceptionally

9    leniently in the state system.  And I think that the

10   high end and upward departures are more appropriate

11   for people who maybe got off too easy in the state,

12   or maybe didn't get charged.

13       I think in this case, because he was given a

14   very serious sentence, and I think it is significant

15   that his time would be in state custody, which just

16   doesn't have the resources that are available to

17   take care of some of his medical conditions.  And so

18   the five to ten years that he will have to do in the

19   state court for crime is going to be a serious

20   punishment.  More serious than he received the last

21   time.

22       And I think that may have been something he

23   would consider, that his medical condition might be

24   treated differently in the state system, and he

25   accepts that's just part of the punishment that he

1   has to face.

2       And I would also note that he's a somewhat

3   small person, and has been threatened from time to

4   time with harassment in the jails.  It's more tough

5   in the state system than it was in the federal, but

6   for someone who has been on heroin for 20 years, not

7   in great physical condition to be able to defend

8   oneself easily.

9       A ten year sentence is a very serious and heavy

10  amount of time to be sentenced to the state system.

11  He is not someone who got off easy.  And he is

12  someone who will suffer a great deal during his time

13  in custody.

14      And based on those factors, I would ask the

15  Court to go somewhat toward the low side of the

16  policy statement.  I would point out the Guideline

17  Commission takes a lot of these factors into account

18  when establishing the ranges, and when they are --

19  and that the Guideline ranges are also established

20  in order to not just to create deterrence, but to --

21  not just to punish a specific crime, he's already

22  had that, but to deal with the breach of trust.

23      And I think it is significant he was a heroin

24  addict, and when a heroin addict has fallen off,

25  even though he didn't last too long, six months off

1  was a big change after 20 years of use.  Falling off

2  and committing another crime, I do think that is

3  understandable, if not the right thing to do.  And

4  is different from someone who just robs a bank

5  because they are greedy.  He was in a difficult

6  situation.  Thank you.

7          THE COURT:  Thank you, Mr. Beevers.

8      Mr. Miller, is there anything you would like to

9  say?

10         MR. MILLER:  Yeah, thank you.

11     Just briefly.  Mr. Beevers did a good job of

12  covering basically what I wanted to express.

13     I have no problem with, you know, the

14  acceptance of responsibility.  I did actually on the

15  first bank robbery.  Quite honestly, yeah, you do

16  some crimes and society must punish you.  I have

17  no -- I don't disagree with that in any way, shape,

18  or form.

19     Obviously I don't want to do any more time than

20  I have to.  I don't think anyone who comes before

21  you does.  I think probably everybody is looking for

22  leniency or sympathy or what not.

23     Honestly, in my case I've got health issues.

24  I've got a lot of time to do.  I know that, I think

25  that's what I have to deal with.

1        Mr. Hansen made a god point, yeah, you know,
2   there is justice that needs to be upheld.
3   Personally, I have to question how much justice
4   would society be served by me serving any more time
5   in federal custody than I have to.  And honestly,
6   this is a realistic fact that will have to be dealt
7   with, I'm going to spend my time in state custody
8   and at some point this time I will be remanded to
9   federal custody, and at that time the cost and
10  expense of incarcerate by the people will have to be
11  beared.
12       I don't dispute the fact that, you know, that I
13  need -- there's a sentencing and you need to pay for
14  the crimes that you commit.  I'm just trying to
15  express practicality here.  And honestly, I don't
16  know what kind of shape I will be in by the time I
17  get done with the state sentence.  It is not going
18  to be good, there is no doubt about that.
19       Fortunately, I mean, I would respectfully
20  request that I be given a concurrent sentence.  I
21  understand that's out of the ordinary and probably
22  not realistic, but just the same, that would be what
23  I want.  But other than that, I just want to express
24  I think basically my attorney, Mr. Beevers, did a
25  good job in expressing it.  Thank you.

1          THE COURT:   Thank you.

2      Well, I've reviewed again the violation report,

3  the original Pre-Sentence Report, and considered the

4  evidence and arguments and your statement.

5      You're very well-spoken when you're sober and

6  away from the heroin.  You have a lot going for you.

7  Unfortunately, the history has not been good, and

8  when you are using you aggravate things dramatically

9  by the type of offenses that you commit.

10      The original sentence here was for bank

11  robbery.  One of the bases to revoke your

12  supervision is another bank robbery.  Whenever you

13  have that offense, there's great risk of injury to

14  someone, even if you aren't going to shoot someone,

15  people get excited in banks and security officers

16  can get excited and shoot somebody trying to shoot

17  you.  It escalates very rapidly.

18      So the punishment is severe, no question about

19  it.

20      In terms of sentencing you concurrently, the

21  Guidelines strongly urge to the contrary, that it be

22  a consecutive sentence.  And it makes sense in this

23  kind of case that that be the case.

24      In looking at this, again, the concern is that

25  none of us want, down the road, to find that you got

1    out and got high and you got involved in another

2    bank robbery or something else where somebody was

3    put at risk or actually injured.  And when you do it

4    twice, it sends us a message that we've got to look

5    at the more serious and severe side of the

6    sentencing equation.

7         The Government is asking that I go above the

8    policy statement range; I'm not going to do that,

9    but I do think the top of the range is called for.

10        And so your supervised release is revoked.

11   You're ordered to serve now for this violation 21

12   months in the Bureau of Prisons.  That sentence runs

13   consecutively to Sangamon County state court case

14   05-CF-2104, the sentence you're serving in that

15   case.

16        I will again order the restitution for the

17   benefit of the First Star -- First State Bank, is

18   it?  First Star Bank.

19             MR. KOTCHER:  First Star Bank, Your Honor.

20             THE COURT:  First Star Bank of Springfield

21   in the amount of 4,356 dollars to be paid

22   immediately.

23        There will be no more supervised release.  If

24   you serve that time on top of the state time, when

25   you get out you will be off supervised release, in

1    this case at least.  And we hope that you are by

2    then healthy and in a proper mind set to use your

3    talents for something positive.  But we'll see.

4        You have the right to appeal from the findings

5    entered in this violation hearing and your sentence.

6    If you wish to appeal you need to file a notice of

7    appeal with the Clerk of the court within ten days,

8    or you can request it of me and I'll file the notice

9    for you.

10       If you're indigent an attorney would be

11   appointed to handle your appeal without charge, and

12   a transcript of the court hearings in this case

13   would be furnished to you without charge for your

14   appeal.

15       Do you understand that?

16           MR. MILLER:  Yes.

17           THE COURT:  Is there anything further from

18   counsel?

19           MR. HANSEN:  Nothing more from the

20   Government, Your Honor.

21           THE COURT:  Mr. Beevers?

22           MR. BEEVERS:  Just I would ask that the

23   Court authorize Probation to give me a second copy

24   of the report.  I have given mine to him.

25           THE COURT:  Yes.  Can you do that,

1  Mr. Kotcher?

2          MR. KOTCHER:  Yes, Your Honor.

3          THE COURT:  Mr. Kotcher will make that

4  available to Mr. Beevers.

5          MR. KOTCHER:  Yes, ma'am.

6          THE COURT:  All right.  The Defendant is

7  remanded to the custody of the-- is it the Marshal

8  or Illinois Department of Corrections?

9      Illinois Department of Corrections.  I've got a

10  form for you.  Madam Clerk, will you give that to

11  the Corrections people.

12          MR. HANSEN:  Thank you, Your Honor.

13      (Whereupon court was adjourned in this case.)

14

15  I, KATHY J. SULLIVAN, CSR, RPR, Official Court

16  Reporter, certify that the foregoing is a correct

17  transcript from the record of proceedings in the

18  above-entitled matter.

19

20

21

22

23

24

25      _____
        License #084-002768

KATHY J. SULLIVAN, CSR, RPR
OFFICIAL COURT REPORTER